IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH SARNOWSKI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-22-915-STE ) |
| KILOLO KIJAKAZI,<br>Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-25). The Appeals Council

denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 4, 2019, the application date. (TR. 17). At step two, the ALJ determined that Mr. Sarnowski's "unspecified bipolar and related disorder" was not a medically determinable impairment, but that he did have the following medically determinable impairments:

- Status-post rib fractures;
- Status-post fracture of the L2 vertebra;
- Central disc protrusion at C2-3;
- Status-post ankle edema;
- Insomnia;
- Hypertension;
- Hyperlipidemia;
- Hypertriglyceridemia;
- Atelectasis and fibrotic changes of the lungs;
- Emphysema;
- Mild brain atrophy;
- Status-post sinus mucosal disease;

- Status-post holiday heart syndrome; and

- Status-post alcohol use with intoxication and complication.

(TR. 17). Even so, the ALJ concluded that none of Plaintiff's impairments were "severe"—that is Mr. Sarnowski did not have an impairment or combination of impairments that had significantly limited (or was expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months. (TR. 18). Thus, the ALJ concluded—at step two—that Mr. Sarnowski was not disabled. (TR. 25).

### III.   ISSUE PRESENTED

On appeal, Plaintiff alleges error at step two. (ECF No. 16:13-24).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   ERROR AT STEP TWO

Plaintiff alleges error with respect to the ALJ's step two findings regarding his mental and physical impairments. (ECF No. 16:13-24). The Court agrees with Mr. Sarnowski.

### A.   Plaintiff's Mental Impairment

On July 10, 2020, Plaintiff underwent a consultative psychiatric evaluation performed by Dr. Konstantinos Tsoubris. (TR. 477-480). Ultimately, and as a result of the examination, Dr. Tsoubris diagnosed Plaintiff with "unspecified bipolar and related disorder." (TR. 480). At step two, the ALJ found this condition to be a "non-medically determinable impairment," stating:

> [T]he undersigned notes that the record reflects no psychiatric treatment records and no diagnosis of this impairment in the record, aside from the diagnosis [from Dr. Tsoubris'] consultative examination in July 2020. However, regarding such diagnosis at the consultative examination, the consultative examination report indicates that [Dr. Tsoubris] based such diagnosis solely upon the claimant's self-report of manic episodes without evidence of supporting objective data or history.
>
> As Dr. Tsoubris based the diagnosis upon the claimant's report of his symptoms and the record does not reflect any other diagnosis of this impairment, any psychiatric treatment, or any clinical observations, medical signs, or laboratory findings demonstrating the existence of a medically determinable impairment, "unspecified bipolar and related disorder" is not a medically determinable impairment that can be the basis for a finding of disability.

(TR. 18) (internal citations omitted). As additional support for rejecting Dr. Tsoubris' opinion, the ALJ also relied on opinions from State Agency psychologists who opined

that Dr. Tsoubris' opinion was based on Plaintiff's subjective reports and a lack of treatment in Plaintiff's records. (TR. 18, 24). Plaintiff alleges error in these findings and the Court agrees with Mr. Sarnowski.

The definition of disability, 20 C.F.R. § 404.1505(a), presupposes the existence of a medically determinable impairment, that is, an "anatomical, physiological, or psychological abnormalit[y] that can be shown by "medically acceptable clinical and laboratory diagnostic techniques" and which is "established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921.

Here, the ALJ essentially rejected Plaintiff's "unspecified bipolar and related disorder" for two reasons: (1) a belief that the diagnosis had been based on Plaintiff's subjective allegations and (2) a lack of any psychiatric/mental health treatment in Mr. Sarnowski's records. Neither reason is valid.

First, to be sure, the existence of a medically determinable impairment cannot be based on a claimant's own report of his symptoms or a mere diagnosis. *See* 20 C.F.R. § 416.921. But here, although Dr. Tsoubris documented Plaintiff's subjective reports of "manic symptoms," he did not indicate that his diagnosis of "unspecified bipolar and related disorder" was based solely on Plaintiff's subjective allegations. Instead, the report indicates that Dr. Tsoubris examined Mr. Sarnowski by performing a series of tests, and then noted that Plaintiff had difficulties in the areas of attention, concentration, and memory due to emotional distress secondary to pain. *See* TR. 478-479. The ALJ acknowledged that Plaintiff was experiencing "memory and concentration deficits due to pain," but the ALJ made no other observation regarding this portion of

5

the psychologist's opinion. (TR. 24).[1] Thus, the ALJ's statement that Dr. Tsoubris' report was based solely on Plaintiff's subjective complaints was simply inaccurate and an insufficient basis on which to reject the opinion. See *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (noting that the ALJ had improperly rejected a physician's opinion because "[n]othing in [the physician's] reports indicates he relied *only* on claimant's subjective complaints.") (emphasis added).

Second, the ALJ rejected Dr. Tsoubris' opinion based on a lack of mental health/psychiatric treatment in Plaintiff's records. But the Tenth Circuit Court of Appeals has held that this, too, is an insufficient basis on which to reject a claim at step two. In *Grotendorst v. Astrue,* 370 F. App'x 879, 882–883 (10th Cir. 2010), the Court stated:

> [T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations.

The Court went on to state: "Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations"[2]—the precise situation in the instant case. Mr. Sarnowski may have

---

[1] Ultimately, Dr. Tsoubris concluded that Plaintiff had "marked" limitations in his abilities to: (1) understand, remember, or apply complex directions and instructions, (2) interact adequately with supervisors, coworkers, and the public, (3) sustain concentration and perform tasks at a consistent pace, (4) sustain an ordinary routine and regular attendance at work, and (5) regulate emotions, control behavior, and maintain well-being. (TR. 479-480). But Dr. Tsoubris' opinion regarding Plaintiff's "marked" limitations is irrelevant to the issue of whether Plaintiff's unspecified bipolar disorder qualified as a "medically determinable impairment." Instead, such portion of the opinion would be pertinent to determining whether the impairment was "severe" at step two and also in determining Plaintiff's residual functional capacity at step four of the sequential evaluation process.

[2] *Id.*

6

lacked any previous mental health treatment—which is why a consultative examination with Dr. Tsoubris was ordered in the first instance. Thus, the Court concludes that the ALJ's second rationale for rejecting Dr. Tsoubris' diagnosis was insufficient.

In sum, the record shows that Dr. Tsoubris diagnosed Mr. Sarnowski with "unspecified bipolar and related disorder" based on "medically acceptable clinical and laboratory diagnostic techniques . . . established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Thus, the ALJ erred in concluding that the "unspecified bipolar and related disorder" was not a "medically determinable impairment."

Once a medically determinable mental impairment is found, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 416.920a(b)(2). The ALJ does this by rating the claimant's limitations in "four broad functional areas," which are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § 404.1520a(c)(3). These ratings are then used to determine the severity of the mental impairment(s) at step two. The Court reverses and remands for further evaluation of Plaintiff's medically determinable mental impairment accordingly.

### B. Plaintiff's Physical Impairments

At step two, the ALJ deemed Plaintiff's physical impairments as "not severe." Plaintiff alleges error in this finding and the Court concludes that, indeed, Plaintiff has presented evidence of a severe impairment, which would allow the disability analysis to proceed.

7

At step two, the agency determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment or combination of impairments is "severe," within the meaning of the social security regulations, if it "significantly limits her ability to do basic work activities." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (internal citations omitted).

The SSA regulation that governs the determination of severity at step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2 (1985) (internal citation and quotation omitted); *see Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (noting that Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.").

Given the purpose behind step two, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004). At step two, the claimant has the burden of proof to show that he or she has an impairment severe enough to interfere with his or her ability to work. *Bowen*, 482 U.S. at 146–54. The burden of proof at step two requires only a *de minimis* showing that an impairment is severe. See *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); *see also Lee*, 117 F. App'x at 677 ("a claimant need only make a 'de minimis' showing of impairment to move on to further steps in the analysis). A claimant must provide objective evidence in the form of signs or laboratory findings as defined above " 'sufficient to suggest a

reasonable possibility that a severe impairment exists.' " *Bryant v. Barnhart*, 2002 WL 1272243, at *2 (10th Cir. 2001) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). In other words, "the starting place [is] the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* The determination of whether an impairment is severe at step two "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (internal citation and quotation omitted).

If there is medical evidence consisting of such objective evidence, such as signs, symptoms, and laboratory findings establishing an impairment, the issue then becomes whether the claimant has made "a threshold showing that his [or her] medically determinable impairment or combination of impairments significantly limits his [or her] ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.' " *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* at *3; *see also Langley*, 373 F.3d at 1123.

The ALJ must carefully evaluate the medical evidence to assess how the claimant's impairment or combination of impairments impacts her ability to do basic

9

work activities. SSR 85-28, 1985 WL 56856, at *4. The ALJ may make a finding of non-severity at step two only when the medical evidence establishes no more than a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. Social Security Ruling 85-28 requires that the evidence "clearly establish[ ]" that the impairment is not severe. The ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are **not** medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. SSR 85-28, 1985 WL 56856, at *3 (emphasis added). Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

*Id.* at *4.

As stated, the ALJ determined that Plaintiff had a number of medically determinable physical impairments, but that none of the impairments were considered "severe." *See supra*. At the administrative hearing, Plaintiff testified that he fell off of a ladder in July of 2016, fracturing six ribs and two lumbar vertebrae. (TR. 45). Plaintiff also stated that he had "problems with his feet" which he described as feeling as though having "been out in like the snow where your feet get so cold and then you come back inside and they start thawing out and you get that heat in your feet." (TR. 46). According to Mr. Sarnowski, his ribs healed, but his back causes him difficulty bending and he is unable to walk for more than 30 minutes at one time. (TR. 45).

Regarding an assistive device, Plaintiff stated that he sometimes used his wife's cane. (TR. 46). Plaintiff stated that he has not seen a doctor for his feet issues because he "cannot find insurance." (TR. 46). Mr. Sarnowski also stated that he only takes Ibuprofen to treat the pain in his back and feet because he cannot afford insurance. (TR. 48). Regarding his blood pressure, Mr. Sarnowski stated that he had "good and bad days" and sometimes took his wife's blood pressure pills. (TR. 47-48). Plaintiff stated he had lots of problems with insomnia, sometimes not sleeping for three days. (TR. 47). Mr. Sarnowski did not testify regarding his central disc protrusion at C2-C3, hyperlipidemia, hypertriglyceridemia, Atelectasis and fibrotic changes of the lungs; emphysema; mild brain atrophy; status-post sinus mucosal disease; status-post holiday heart syndrome; and status-post alcohol use with intoxication and complication.

On July 10, 2020, Dr. Paul Mercurio performed a consultative physical examination of Mr. Sarnowski, based on his complaints of hypertension, insomnia, and chronic pain in his feet and back. *See* TR. 483-490. Dr. Mercurio performed tests on Plaintiff and concluded that he:

- Walked slow with an antalgic gait; [3]
- Could only do half of a squat; and
- Had limited range of motion—only ten degrees—in his lumbar spine extension.

---

[3] The Merriam-Webster Dictionary provides the medical definition of "antalgic:" "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort." Merriam-Webster.com Medical Dictionary, available online at, https://www.merriam-webster.com/medical/antalgic. (last visited: June 7, 2023).

(TR. 485-486). Ultimately, Dr. Mercurio stated that Plaintiff would have "moderate" limitations in his abilities to stand, walk, climb stairs, and repeatedly bend, lift, carry, and kneel. (TR. 487). The ALJ recognized Dr. Mercurio's findings regarding decreased range of motion in Plaintiff's lumbar spine, but dismissed them by relying on the remainder of Dr. Mercurio's findings which showed that Plaintiff's range of motion was "within normal limits." (TR. 24). The ALJ also rejected Dr. Mercurio's findings based on Plaintiff's lack of treatment for his back issues, which, the ALJ stated, was consistent with the opinions of the State Agency physicians who reviewed Plaintiff's medical file. (TR. 24-25). But as discussed, these reasons are insufficient. *See supra*. Additionally, the ALJ failed to acknowledge Dr. Mercurio's finding that Mr. Sarnowski walked with an antalgic gait—evidence which supported Plaintiff's testimony regarding his sometimes having to use his wife's cane due to difficulty with his feet. *See supra*.

At step two, the claimant has the *de minimis* burden of proof to show that he has an impairment severe enough to interfere with his or her ability to work. *See supra*. Here, evidence exists in the form of Dr. Mercurio's examination and report which demonstrates that Plaintiff has met this burden with respect to problems with his lumbar spine and feet. *See supra*. Of the remaining impairments, Plaintiff only testified that two of them—insomnia and hypertension—could arguably interfere with his ability to work. *See supra* (Plaintiff's testimony noting that sometimes he did not sleep for three days at a time and he had "good and bad days" with his hypertension). Although the record does not contain objective evidence which would support a finding of severity regarding these impairments, Plaintiff repeatedly referred to his inability to

afford treatment or find insurance so that he could see a doctor. *See supra*. To be sure, an "inability to pay may provide a justification for a claimant's failure to seek treatment." *Threet v. Barnhart*, 353 F.3d 1185, 1190, n. 8 (10th Cir. 2003). Thus, on remand, the ALJ shall specifically consider this factor in evaluating Plaintiff's claim.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 9, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE